---

## *In re* LASAK'S ESTATE.

*(Surrogate's Court, Westchester County.* September, 1890.)

TRUSTS—RATE OF INTEREST ON TRUST FUND.
    Testator directed that a specified sum be invested in certain securities, and that the income be paid to his daughter for her support during life. *Held* that, though the fund was not invested as directed, the daughter is entitled to receive from the trustee the amount which the fund, if invested as directed, would have produced.

Application by Antoinette Lasak Schermerhorn to compel the New York Life Insurance & Trust Company, administrator with the will annexed of Francis W. Lasak, deceased, to pay applicant $450 as interest due August 13, 1890, on a legacy of $30,000 held in trust for her by the administrator. The administrator refusing to comply with the order, it was cited to show cause.

Francis W. Lasak by his will gave to his executor $30,000 in trust to invest only in United States, state, or city bonds, or in bonds and mortgages on real estate in New York or Brooklyn, or Westchester county, and to pay the interest thereon to his daughter Antoinette L. Lasak, now Schermerhorn, in quarterly payments during her natural life, with remainder to her issue. Testator died in February, 1888, and his will was admitted in July, 1889. The sole executor named in the will renounced the office, and the New York Life Insurance & Trust Company was appointed administrator with the will annexed. The administrator has in hand about $270,000 of assets of the estate, of which about $40,000 is invested in United States 4 per cent. bonds, and about $230,000 in stocks and railroad bonds. After the will was admitted to probate an application was made for an order directing the administrator to pay Mrs. Schermerhorn interest on the fund from testator's death for the first quarter, which application was denied, on the ground that the legatee not being a minor, and the bequest not being made for her sup-

port, she was not entitled to it. This decision was reversed on appeal, (8 N. Y. Supp. 775,) and since then the surrogate has made several orders, each directing the administrator to pay Mrs. Schermerhorn $450, which was interest for each quarter at 6 per cent. on the $30,000 fund; the last of these orders being the one here under consideration. The answer of the administrator to the citation to show cause alleged that, for the six months following the expiration of the year from the testator's death, it has paid to Mrs. Schermerhorn $600, leaving due to her of interest actually earned only $43.30, instead of the $450 ordered to be paid.

For former reports, see 7 N. Y. Supp. 2; 8 N. Y. Supp. 740, 775; 10 N. Y. Supp. 80, 844.

*Aaron Kahn,* for petitioner. *Emmet & Robinson,* for respondent.

COFFIN, S. In regard to interest on legacies, these rules seem to have been settled; If a general legacy be given, with no time of payment fixed, it begins to draw interest one year from the date of the letters when it becomes due. *Thorn* v. *Garner,* 113 N. Y. 197, 21 N. E. Rep. 149. If a legacy is given for life, with remainder over, no interest is due until the end of two years. Per Lord ELDON, in *Gibson* v. *Bott,* 7 Ves. 96; *Sullivan* v. *Winthrop,* 1 Sum. 13. But, where it is given for support, it will draw interest from testator's death, (*Cooke* v. *Meeker,* 36 N. Y. 15; *Kinmonth* v. *Brigham,* 5 Allen, 270;) and so in respect to the bequest of a residue of personal estate for life, with remainder over, the general rule (called the rule in *Howe* v. *Lord Dartmouth,* 7 Ves. 138a) is that where a residue of personal property is bequeathed for life, with remainder over, and not specifically, it is to be converted into the 3 per cents. (Having no such 3 per cents, the only rule recognized in Massachusetts as obligatory upon a trustee in making investments is that he shall act with good faith in the exercise of sound discretion. *Harvard* v. *Amory,* 9 Pick. 446.) The tenant for life of a bequest of the residuum is to be allowed, as from the death of the testator, the income of such parts of the personal estate as were at his death, and have remained, in a state of investment which ought to be recognized and allowed to be continued by a court of equity. But that with regard to those parts which were not at his death, nor have been since in such a state of investment as can be so recognized, they must be so valued as at a period of one year after his death, and interest from his death on the value so taken, not exceeding 4 per cent., must be paid to the tenant for life. 2 Williams, Ex'rs, (6th Amer. Ed.) 1498, 1499. If there is a positive direction in a will that the trustee shall convert the personal estate into government or real securities, and hold them in trust for one for life and remainder over, the *cestui que trust* for life is entitled to receive only so much income as would have arisen from the personal estate, if converted and invested within a year after the testator's death. Trustees are ordinarily allowed one year to convert the estate into the securities directed by the will. Perry, Trusts, (2d Ed.) § 548, and cases cited. And if there be an unconverted security bearing a much higher rate of interest, they cannot pay the whole interest so arising to the tenant for life; if they do they will be liable to make good the remainder, and the difference between what should have been paid under the above rule and the sum actually paid. Id., citing *Dimes* v. *Scott,* 4 Russ. 195; 2 Jarm. Wills, 202 (5th Amer. Ed.)

Applying these rules, so far as pertinent, to the facts as presented, it having been determined in this case by the supreme court, apparently in conflict with the *dictum* in *Thorn* v. *Garner, supra,* that the legacy, although not given out of the residue, is given for the support of Mrs. Schermerhorn, who was an adult married woman, she is entitled to such interest from the death of the testator as the fund, if invested as he directed, would have produced. No question, however, as to past payments, is here involved; the only one to be considered being the amount which should be paid to her

for the quarter ending August 13th last. Of the whole amount in the hands of the administrator, $50,298 he left in cash has been invested in the United States 4 per cent. consols of the face value of $40,400, which, therefore, cost 124 per cent., yielding an annual interest of $1,616, or about 3.21 per cent. on the amount so invested. The balance of the fund on hand still remains in the securities in which it was invested by the testator, which are of a character not recognized by the courts, amounting at par to $219,000, (estimated present value $223,124.) This sum, at 4 per cent., would produce an income of $8,760, but it actually yielded $10,410; but a portion of it ($140,000) was subject to taxation, and the administrator paid on account thereof the sum of $2,800; thus making the net income $7,610, or $1,150 less than the 4 per cent. rate would have made. Let us now see what interest would have been earned for the beneficiary if the securities had been converted into bonds and mortgages. The affidavits are somewhat conflicting as to current rates of interest on investments of that description. It seems doubtful if they would exceed 5 per cent., but giving to the beneficiary the benefit of the doubt, and fixing the average rate at about $5\frac{1}{2}$, the principal would be subject to a tax of about 2 per cent., and thus it would net only $3\frac{1}{2}$ per cent., or $7,665, on the $219,000. Thus if the fund for the benefit of this legatee had been invested in either of the modes mentioned, and as directed by the testator, the net interest to which she would be entitled, to wit, 3.21 on the cost of the government bonds, and $3\frac{1}{2}$ on mortgages, could not exceed $3\frac{1}{2}$ per cent., about the rate actually earned on the whole. As to the producing character of the alternative investments of city bonds and state stocks, no evidence is furnished, but it is fair to assume that they would have yielded no greater rate of interest.

It does not seem to be necessary here to go into the question determined by *Farwell* v. *Tweddle*, 10 Abb. N. C. 94, where it was held that a trustee, investing in government bonds at a premium, should retain a certain portion of the interest to make up the difference between the cost and the amount received at maturity. Here no portion of the fund or securities held has been set apart for any of the beneficiaries, and no conversion of the securities held by the testator in his lifetime has been made, doubtless because of the contest pending in relation to the validity of the will. Had they been converted and invested, and the fund for the benefit of Mrs. Schermerhorn been set apart in government bonds, the question above disposed of might have been properly raised; but, as it stands, she has no more interest in that investment than any other beneficiary. And still it is, to a certain extent, a proper subject for consideration. The conclusion is that the administrator was justified in declining to comply with the order directing the payment of $450, and that such order should have directed the payment of $262.50, only for the quarter covered by that order, which is, in effect, allowing her interest on the fund at the rate of $3\frac{1}{2}$ per cent. The order should be modified accordingly.